IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-65

No. 71A20

Filed 11 June 2021

STATE OF NORTH CAROLINA

v.

BRANDON SCOTT GOINS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 269 N.C. App. 618 (2020), vacating judgments entered on 21 September 2018 by Judge Christopher W. Bragg in Superior Court, Cabarrus County, and remanding for a new trial. Heard in the Supreme Court on 26 April 2021.

*Joshua Stein, Attorney General, by Ryan Y. Park, Solicitor General, and Nicholas S. Brod, Assistant Solicitor General, for the State-appellant.*

*Joseph P. Lattimore for defendant-appellee.*

HUDSON, Justice.

Here we must determine whether a prosecutor's improper comments on defendant's decision to plead not guilty during closing arguments prejudiced defendant so as to warrant a new trial. Because we conclude that defendant was not prejudiced, we reverse and remand to the Court of Appeals for consideration of defendant's remaining issues on appeal.

## I.  Factual and Procedural Background

Defendant plead guilty to a felony in 2016 and was later released on probation.

Defendant's probation officer testified that defendant did not follow the terms of his probation and actively avoided meeting with the officer. Defendant met with his probation officer only once over a period of several months and during that meeting the officer explained that if defendant continued to avoid supervision he could return to jail. Some time prior to April 2017, having lost all contact with defendant, the probation officer secured a warrant for defendant's arrest.

¶ 3          Defendant's grandmother testified at trial that defendant showed her a gun at a family gathering on Easter 2017 and told her that the bullets inside were powerful enough to pierce a bulletproof vest. According to his grandmother's testimony, defendant said that he would kill himself—or the police would have to kill him— before he went back to jail. Defendant's uncle also testified that defendant showed him the gun. According to the uncle, defendant said the gun contained "cop-killer" bullets and that he would rather kill himself than return to prison.

¶ 4          On 28 April 2017, police officers located defendant at a hotel in Kannapolis. When defendant saw one of the officers, Detective Hinton, he ran into a stairwell. Detective Hinton chased defendant up the stairs. After a struggle on the third-floor landing, in which Detective Hinton slammed the hallway door on defendant and defendant pointed his gun directly at Detective Hinton, defendant managed to slide through the door and run. The officer followed yelling, "Police," "Drop your gun," and "Drop your weapon." As he was running away, defendant passed a hotel resident,

Shannon Arnette, who testified at trial that defendant suddenly stopped running, turned around, drew his weapon, and fired at Detective Hinton. Detective Hinton testified that he saw and heard the initial blast from defendant's gun. Both Detective Hinton and Arnette testified that defendant shot first and that Detective Hinton only returned fire after defendant's first shot.

¶ 5     The exchange between defendant and Detective Hinton was also captured on hotel surveillance video, which was played for the jury. The video, which has no sound, shows defendant running down the hallway, stopping, and turning around. Defendant then stood with his back to the surveillance camera, facing Detective Hinton, indicating that he was ready to fire, or already was firing, his gun. Defendant then fell to the ground and the video footage shows two bursts of light from his gun. In total, defendant fired four of his five bullets.

¶ 6     Eventually the officers detained defendant. At trial, a police officer who later arrived at the scene testified that the ammunition in defendant's gun had "hollow-point rounds," bullets that are colloquially referred to as "cop-killers." The officer testified that hollow-point bullets cause more serious injuries than other types of bullets.

¶ 7     Defendant presented no evidence in his defense.

¶ 8     During closing arguments, the State made the following remarks:

> [You m]ight ask why would [defendant] plead not guilty? I
> contend to you that the defendant is just continuing to do

what he's done all along, refuse to take responsibility for
any of his actions. That's what he does. He believes the
rules do not apply to him.

. . .

[Defendant's] not taking responsibility today. There's
nothing magical about a not guilty plea to attempted
murder. He's got to admit to all the other charges. You see
them all on video. The only thing that's not on video is
what's in his head. He also knows that those other charges
carry less time. There's the magic.

Defendant did not object to the State's closing argument. Ultimately, the jury found

defendant guilty on all counts.

At the Court of Appeals, defendant argued that the trial court's failure to

intervene *ex mero motu* was reversible error.[1] The majority of the Court of Appeals

panel agreed, holding that the prosecutor's commentary on defendant's decision to

plead not guilty was so unfair it violated defendant's due process rights. The Court of

Appeals ordered a new trial. The dissenting judge would have required a showing of

prejudice by defendant because he failed to object at trial. Based on the record, the

dissenting judge would have held that the State's closing argument was improper,

but that defendant was not prejudiced by the error. The State appealed on the basis

of that dissenting opinion.

## II.   Analysis

---

[1] Defendant raised other issues at the Court of Appeals, but this is the only issue
raised by the State in its appeal to our Court, as it was the only issue addressed in the
dissenting opinion.

"The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *State v. Jones*, 355 N.C. 117, 133 (2002). In *State v. Huey*, we explained,

> when defense counsel fails to object to the prosecutor's improper argument and the trial court fails to intervene, the standard of review requires a two-step analytical inquiry: (1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial. Only when it finds both an improper argument and prejudice will this Court conclude that the error merits appropriate relief.

370 N.C. 174, 179 (2017) (cleaned up).

Here, the State concedes that the prosecutor's closing argument commenting on defendant's decision to plead not guilty was improper. Therefore, we must only determine whether defendant has shown he was prejudiced by the improper argument. As we explained in *Huey*,

> [o]ur standard of review dictates that only an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken. It is not enough that the prosecutors' remarks were undesirable or even universally condemned. For an appellate court to order a new trial, the relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.

*Id.*, at 180 (cleaned up). Specifically, "defendant has the burden to show a 'reasonable possibility that, had the error[s] in question not been committed, a different result would have been reached at the trial.' " *Id.*, at 185 (quoting N.C.G.S. § 15A-1443(a) (2019)) (alteration in original).

¶ 12        Here, the Court of Appeals majority concluded that the State's closing argument "violate[d] [d]efendant's right to receive a fair trial," which "rendered the proceedings fundamentally unfair and requires a new trial." *State v. Goins*, 269 N.C. App. 618, 620 (2020). Given that the argument here was improper, we must evaluate whether or not it was prejudicial. *Huey*, 370 N.C. at 180. The Court of Appeals erred by failing to analyze prejudice.

¶ 13        When evaluating the prejudicial effect of an improper closing argument, we examine "the statements 'in context and in light of the overall factual circumstances to which they refer.' " *Id.* (quoting *State v. Alston,* 341 N.C. 198, 239 (1995)). For example, to evaluate the context here, we consider the entirety of the closing argument, the evidence presented at trial, and the instructions to the jury. *E.g.*, *State v. Phillips*, 365 N.C. 103, 135 (2011) ("Statements or remarks in closing argument must be viewed in context and in light of the overall factual circumstances to which they refer." (cleaned up)); *State v. Jones*, 355 N.C. 117, 134 (2002) ("Improper argument at the guilt-innocence phase, while warranting condemnation and potential sanction by the trial court, may not be prejudicial where the evidence of

defendant's guilt is virtually uncontested."); *State v. Goss*, 361 N.C. 610, 626 (2007) ("Even if we assume *arguendo* that the closing argument in this case was grossly improper, we conclude that any prejudice to defendant was cured by the trial court's instructions to the jury following closing arguments.").

¶ 14    Here, the bulk of the State's closing arguments focused on a review of the evidence presented during trial and the elements of the offenses charged. The prosecutor argued that uncontroverted evidence showed that defendant was guilty of two counts of assault with a deadly weapon on a law-enforcement officer and one count of possession of a firearm by a felon. Thus, the only remaining issue for the jury to decide was whether defendant was guilty of attempted first-degree murder, which hinged on defendant's intent. The prosecutor explained the intent required for attempted first-degree murder and cited evidence that supported that intent. After emphasizing the deliberate, nonaccidental nature of the shooting, the prosecutor made the statements quoted above which give rise to the issue on appeal. The improper argument was a small portion of the State's closing argument and was not the primary or even a major focus of the State's argument to the jury.

¶ 15    We also examine the evidence presented to the jury. The State presented evidence that defendant was violating his probation and would rather kill himself or be killed by the police than go back to jail. Several witnesses testified that defendant's gun was loaded with bullets designed to cause more serious injuries, which are

colloquially referred to as "cop-killers." The State's witnesses also testified that when defendant was eventually located by police, he pointed his gun directly at a police officer in the midst of the pursuit. Furthermore, after Detective Hinton clearly identified himself as a police officer, defendant turned around, drew his weapon, and fired at the officer. Multiple witnesses testified that defendant shot first and that Detective Hinton only returned fire after defendant's first shot. In addition, the hotel surveillance video which was played for the jury at trial showed the shootout between defendant and Detective Hinton. Between the video and the testimony of eyewitnesses who corroborated the State's account of events, "virtually uncontested" evidence of defendant's guilt was submitted to the jury for its consideration. *Jones*, 355 N.C. at 134.

¶ 16 Finally, we examine the instructions to the jury. Here, the trial judge instructed the jury both orally and in writing. The judge told the jury that defendant's decision to plead not guilty could not be taken as evidence of his guilt. Specifically, the jury was instructed that "[t]he fact that the defendant has been charged is no evidence of guilt" and "when a defendant pleads not guilty, the defendant is not required to prove the defendant's innocence." The judge also stated that the "defendant is presumed to be innocent" and "[t]he State must prove . . . that the defendant is guilty beyond a reasonable doubt." In addition, the record here indicates that the jury properly followed the judge's instructions. Specifically, during its

deliberations, the jury asked to re-watch the slow-motion surveillance video of the shooting. This tends to show that the jury based its decision on the evidence rather than on passion or prejudice resulting from the prosecutor's improper argument.

¶ 17    Based on the foregoing, we conclude that defendant was not prejudiced by the prosecutor's improper closing argument. The prosecutor's reference to defendant's plea of not guilty was undeniably improper, and as the dissenting opinion from the Court of Appeals stated, "[c]ounsel is admonished for referring to or questioning [d]efendant's exercise of his right to a trial by jury." *State v. Goins*, 269 N.C. App. 618, 626 (2020) (Tyson, J., dissenting). However, in the context of the entire closing argument we cannot conclude that the prosecutor's use of this improper argument was "so overreaching as to shift the focus of the jury from its fact-finding function to relying on its own personal prejudices or passions." *State v. Duke*, 360 N.C. 110, 130 (2005). Neither can we conclude that the mention of defendant's choice to plead not guilty "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Huey*, 370 N.C. at 180.

¶ 18    Furthermore, evidence of defendant's guilt was essentially uncontroverted and ultimately, the jury found defendant guilty of all charges. Of course, the jury could have reached a different conclusion in evaluating the evidence, but we are not convinced that there is a reasonable possibility that without the State's improper closing argument, the jury would have reached a different verdict.

¶ 19    Finally, although it would have been better for the judge to intervene immediately after the improper argument and directly clarify to the jury that defendant's not-guilty plea could not be counted against him in any way, we believe the judge's instruction to the jury effectively cured any error. The judge clearly instructed the jury on their role and made it clear that defendant is presumed to be innocent, that when a defendant pleads not guilty he is not required to prove his innocence, and that the State must prove defendant's guilt beyond a reasonable doubt. Moreover, the jury's requests to reexamine the evidence indicates that the jury made a reasoned decision based on the evidence rather than a decision based on passion or prejudice. Therefore, we cannot conclude that defendant has met his burden of showing that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached" at trial. N.C.G.S. § 15A-1443 (2019).

## III.    Conclusion

¶ 20    In conclusion, defendant has failed to show that he was prejudiced as a result of the prosecutor's improper closing arguments. Accordingly, we reverse and remand to the Court of Appeals to address the remaining issues raised by defendant on appeal.

REVERSED AND REMANDED.